BARRY, Judge.
Dr. E.J. Lauritsen and DeGaulle Veterinary Clinic devolutively appeal from a directed verdict which denied their request to have a zoning amendment declared void. Plaintiffs claim statutory notice requirements were ignored and the proposed change constitutes illegal spot zoning. The question is whether the plaintiffs met their burden of proof by a preponderance of the evidence. C.C.P. Art. 1810.
L. Zuppardo Realty Company, Inc., owner of the subject property, requested the change from “RO, General Office District” to “B-l, Neighborhood Business District” in order to accommodate a prospective tenant who intended to operate a veterinary clinic.[1] Section 8, RO General Office Dis *581 trict, of the New Orleans Comprehensive Zoning Ordinance specifically prohibits veterinary clinics.[2]
On August 16, 1984 the district councilman introduced a reclassification motion which was referred to the City Planning Commission. The C.P.C. advertised a public hearing date and signs were posted in the adjoining area. The C.P.C. recommended that the change be denied, but the City Council overruled the C.P.C. and adopted the ordinance on December 6, 1984. Before the ordinance was signed by the Mayor on December 12, 1984, additional language was added:
“That the property may only be used for an animal clinic or any uses permitted in the RO District”.
Dr. Lauritsen and DeGaulle Veterinary Clinic (owners of a nearby clinic) sued the City, the City Council, the C.P.C. and Zup-pardo Realty asking for an injunction and a declaratory judgment that the ordinance is void. Southern Veterinary Services, Inc., and Gutter Veterinary Clinic, Inc., Zuppar-do Realty’s lessee and sub-lessee, intervened opposing the suit. The trial court granted the C.P.C.’s exception of procedural capacity, other exceptions were dismissed, and the defendants’ and inter-venors’ motion for a directed verdict was granted.
Plaintiffs contend the trial court erred by finding that the City Council complied with the mandatory notice requirements of La. R.S. 33:4724. They argue the C.P.C.’s notice of its hearings is not a substitute for the City Council’s advertisement of hearings because the C.P.C. is only the advisory and investigative body for the Council which has the ultimate authority to approve zoning changes. Plaintiffs claim the Council’s one published notice of its hearing is insufficient.
La.R.S. 33:4724:
The legislative body of a municipality which has provided for a comprehensive zoning plan shall provide for the manner in which the regulations and restrictions and the boundaries of the districts shall be determined, established, and enforced and from time to time amended. No regulations or restrictions shall become effective until after a public hearing at which parties in interest have an opportunity to be heard. A public hearing in relation to the regulations may be held by the legislative body of a municipality which has provided for a comprehensive zoning plan. In such case notice of the time and place of the hearing shall be published once a week in three different weeks in the official journal of the municipality or, if there be none, in a paper of general circulation therein; at least fifteen days shall elapse between the first publication and the date of the hearing.
La.R.S. 33:4725:
The regulations, restrictions, and boundaries may, from time to time, be amended, supplemented, changed, modified or repealed ...
The provisions of R.S. 33:4724 relative to public hearing and official notice shall apply equally to all changes or amendments.
La.R.S. 33:4726:
In order to avail itself of the powers conferred by R.S. 33:4721 through R.S. 33:4729 the legislative body of the municipality shall appoint a zoning commission whose function it shall be to recommend the boundaries of the various original districts as well as the restrictions and regulations to be enforced therein, and *582 any supplements, changes or modifications thereof. Before making any recommendation to the legislative body of the municipality the zoning commission shall hold a public hearing. Notice of the time and place of the hearing shall be published at least three times in the official journal of the municipality, or if there be none, in a paper of general circulation therein, and at least ten days shall elapse between the first publication and date of the hearing. After the hearing has been held by the zoning commission it shall make a report of its findings and recommendations to the legislative body of the municipality. The legislative body shall not hold its public hearings or take action until it has received the final report of the zoning commission.
Where a municipal planning commission exists it shall be the zoning commission.
The statutes clearly provide that the City Council may hold a public hearing before amending a zoning regulation. A public hearing is not mandated.
The C.P.C. published three notices of the public hearing which listed the dates, location and time, and posted signs in the area. The City Council scheduled the hearing for its November 29,1984 meeting and published a notice:
Public notice is hereby given that the Council of the City of New Orleans will consider, at its regular meeting of November 29, 1984 at 10:00 a.m., City Hall, Council Chamber, the adoption of Ordinance Calendar No. 12,140 ...
The notice states that the Council would consider the ordinance, not that a public hearing would be held.
Section 3-112(5) of the City Charter establishes the procedure to be used for the “Introduction, Consideration and Passage of Ordinances” by the City Council:
“Proposed ordinances on any of the following specified subjects can be adopted only at a regular meeting of the Council and shall not be adopted until at least twenty-one days after copies thereof shall have been distributed to all members of the Council and made available to the public, nor until a notice of the introduction of such a proposed ordinance shall have been published in the official journal of the City not less than one week nor more than two weeks after the introduction thereof, which notice shall state the substance of the proposed ordinance and the date of the meeting at which the Council shall begin its consideration thereof, to-wit:
(c) zoning or rezoning, or changing the zoning districts or classifications ...”
There is a significant distinction between a “public hearing” and a “consideration”. R.S. 33:4726 requires the C.P.C. to hold a public hearing after three published notices, whereas the City Charter only requires one publication of the Council’s consideration date.
Hunter’s Grove Homeowners Association v. Calcasieu Parish Police Jury, 422 So.2d 673 (La.App. 3rd Cir.1982) considered a similar situation at pages 676, 677:
Plaintiffs argue that the Police Jury chose to conduct public hearings on the proposed zoning changes, when it considered the Zoning Commission’s recommendations regarding those changes at its regular meetings. We disagree ... It is clear that, before making any recommendation to the Police Jury concerning zoning changes, the Zoning Commission “shall” hold a public hearing, and that notice of the time and place of that hearing “shall” be advertised as set forth in Section 6 of the enabling act. The evidence clearly shows that the Zoning Commission held public hearings on both of the proposed zoning changes, and that notice of the time and place of both of the hearings was advertised in accordance with law ...
It is our opinion that the decision of the Police Jury to consider proposed zoning changes at its regular meetings does not constitute a “public hearing” on the proposed changes, as contemplated by Section 4 of the enabling act, and that the Police Jury is not required to give notice of the time and place of its regular meetings simply because it will consider proposed zoning changes at that time.
*583 The City Council meeting was not advertised or required to be a “public hearing” and R.S. 33:4724 is not applicable. The statutory notice requirements were complied with.
Plaintiffs next allege the amendment was arbitrary, capricious, discriminatory and an abuse of the city’s police power. They maintain the amendment should be declared null and void because it constitutes illegal spot zoning in violation of R.S. 33:4722 and R.S. 33:4723. Defendants and intervenors argue the trial court properly granted a directed verdict because plaintiffs failed to meet their burden of proof.
A zoning ordinance is presumed valid and parties attacking its validity have the burden of proving that it is either arbitrary or an unreasonable exercise of the police power lacking a substantial relation to the health, safety and general welfare of the public. Hibernia National Bank in New Orleans v. City of New Orleans, 455 So.2d 1239 (La.App. 4th Cir.1984), writ denied 459 So.2d 542 (La.1984). Zoning is a legislative function and courts will not substitute their wisdom for that of a legislative body or other zoning authority except when there is an abuse of discretion or an excessive use of power. However, rezoning on a piecemeal or spot basis is highly suspect. A city purporting to act under its police powers cannot create inside of a large area of property one parcel relegated to a different zoning classification when no rational reason exists for the isolated classification. Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1974).
All spot zoning is not deemed to be illegal. A five part analysis can determine the validity of a spot zoning ordinance. Sears, Roebuck and Co. v. City of Alexandria, 155 So.2d 776 (La.App. 3rd Cir.1963), writ denied 245 La. 83, 157 So.2d 230 (1963).
Initial considerations under Sears are whether the proposed “spot” is inherently distinguishable from other property in the district and whether the reclassified or adjoining land is subject to nonconforming use. Other determinations are whether the rezoning bestows a special advantage over adjoining similar property and whether the change was enacted in accordance with the comprehensive zoning plan designed to promote public health, safety and welfare, rather than to benefit a particular property owner. Sears also questions if the ordinance complies with the statutory requirement that reasonable consideration be given to the character of the district, property values, and appropriate land use.
The burden of proof for a zoning reclassification is on the proponent. When the reclassification amounts to spot zoning, the proponent must show a rational basis for the change. Therefore the defendants must prove that there was some mistake in the original zoning or that the character of the neighborhood has changed to such an extent that reclassification ought to be made. Dufau v. Parish of Jefferson, 200 So.2d 335 (La.App. 4th Cir.1967).
The General DeGaulle Corridor Study dated March 22, 1982 was made to develop a land use plan and design manual for General DeGaulle Drive, which fronts the subject property. It specifies alternatives to the commercial development of the thoroughfare in order to avoid deleterious effects on the community. The report recommends no changes to the existing zoning classifications, with the exception of possible rezoning of vacant acreage to RO and overlaying a special district providing design requirements to control the quality of. development.
The City Planning Commission’s reasons for opposing the zoning change provide:
1. The request bears the characteristics of a “spot zone” which could encourage additional petitions seeking to extend the B-l District further in the area.
2. Reclassification would disrupt the integrity and continuity of the existing RO District.
3. There is no demonstrable need for additional neighborhood shopping district in this area at this time.
Ms. Patricia Fretwell, principal planner for the C.P.C., stated at the City Council meeting:
*584 The request does bear the characteristics of a spot zone since it singles out one piece of land and gives it a separate treatment not enjoyed by the rest of the property. Reclassification would place the zoning district boundary line on interior lot lines which is not a stable location and could encourage additional petitions seeking to extend the “B-l District” and any use permitted in the “B-l District” would be permitted on the petitioned property. Further, there is no demonstrable need for additional neighborhood shopping in this area at this time. The Planning Commission has recommended denial.
The Councilman proposing the reclassification admitted the zoning change was a “spot” zone:
I’ve been told that the only way we can get this particular business onto DeG-aulle is to approve the zoning change.[3] I know that philosophically the Planning Commission has to oppose us because it is a spot zone. That notwithstanding I do recommend that the Zoning Petition from for [sic] a change from “RO” to “B-l” be granted.
A look at the map of the area (appendix) convinces us that the subject parcel is an integral part of an RO area and is surrounded by commercial tracts. Thus, it is inherently indistinguishable from all of the other property in the RO district. Clearly, the zoning change bestows a special advantage over adjoining similar property.
There is no showing that the character of the neighborhood has changed. The City Council does not have the authority to arbitrarily make a zoning change without a need which is for the public good. The criteria of Sears has not been met.
Based on this record we find no rational reason to rezone this property in order to accommodate the owner (or the tenant) when no demonstrable need has been shown. The case is ripe for a full hearing on the merits.
The directed verdict is reversed and the case remanded for further proceedings.
REVERSED: REMANDED.
*585 [[Image here]]

. RO is a general office district which permits medical facilities for people. B-l is a business district which permits animal clinics.

. Section 8. RO General Office District 8.1 Purpose of the District
The purpose of this district is to create an environment especially suited to a group of professional, general administrative, and general sales offices, together with certain commercial uses primarily to serve employees in the district ...
8.2 Permitted Uses
A building or land shall be used only for the following purposes subject to the performance standards of Article 5, Section 17:
5. Clinics, but not animal clinics, and hospitals, ...
In order to meet zoning requirements allowing a veterinary clinic, property must be "down-graded” in zoning to a B-l designation.

. We note there is commercial zoning on General DeGaulIe across the street and also less than two blocks away. See appendix.