536 So.2d 767 (1988)
Jacques LAUER and Raymond Locatta
v.
CITY OF KENNER.
No. 88-CA-324.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 1988.
Writ Denied February 24, 1989.
*768 Lawrence D. Wiedemann, W. Lloyd Bowers, New Orleans, for plaintiffs-appellants.
George W. Giacobbe, Kenner, for defendant-appellee.
Before GRISBAUM, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.
This is an appeal by Jacques Lauer, plaintiff-appellant, from a judgment in favor of City of Kenner, defendant-appellee, in his suit seeking damages for loss of business income allegedly caused by the city's grant of a land use variance to a business competitor. Because we find no error in the result reached by the trial court, we affirm.
When this dispute arose in 1982, Lauer was the sole stockholder and president of Sun Basket, Inc., which operated a grocery store in Kenner. It appears that in late 1979 or early 1980, Folmar & Associates, Ltd., a developer, began negotiations to purchase a tract of land about one mile from the Sun Basket store. Folmar's plan was to build a Delchamp's Food Store on the site. However, in its opinion this project would not be feasible unless it could get certain land use restrictions on the property changed by the Kenner City Council.
*769 The tract consisted of two lots, one zoned C-2 (general commercial) and the other R-1 (single family residential). Under the Kenner Comprehensive Zoning Ordinance, art. 13, Sec. 13.02(A)(20), retail businesses having 25,000 square feet of floor area are permitted in C-2 zones, and stores of over 25,000 square feet are also permitted in this classification upon approval by the City Council. Under art. 6 of the Zoning Ordinance, commercial uses are not permitted in R-1 zones.
Folmar proposed a building in excess of 25,000 square feet, and therefore was required to seek council approval. It also proposed resubdividing the two lots into one parcel, and requested that it be permitted to use a ten foot wide strip of the R-1 lot as a driveway, in return for which it would let the city use the remainder of that lot as a public park.
Pursuant to the authority of La.R.S. 33:4726, Kenner has established a City Planning and Zoning Commission, which is empowered to make recommendations to the Council as to any proposed changes to land use or zoning regulations. Article 23, sec. 23.02, of the Zoning Ordinance sets forth the procedures to be followed, which are all in accord with La.R.S. 33:4726. The proposed changes must be presented to the Commission, which shall then publish three times a notice of the time and place for a public hearing. If the Commission approves of the proposal after this public hearing, it makes a favorable recommendation to the City Council, which then votes on the matter.
Additionally, Article 20.08, of the Zoning Ordinance provides for Planned Unit Developments (PUD's), the purposes of which are to permit uses of property which are otherwise prohibited by the use regulations of a particular district. Such proposals are also subject to the procedural requirements of Art. 23, sec. 23.02(A).
In the present case, Folmar decided to proceed with a P.U.D. Appropriate plans were submitted to the Planning and Zoning Commission, the matter was aadvertised three times, and a public hearing was held. The Commission recommended to the Council that the proposal be approved, and the Council advertised once that the matter would be taken up with a public hearing at its regular meeting of May 20, 1982. On that date, the matter was deferred until the May 27 meeting. On that date, after full public discussion, the ordinance was defeated by a 3-3 vote. Later in that meeting a motion to reconsider was urged by one of the councilmen, but that motion died for lack of a second. Two days later a special meeting was held, limited to discussion of budget matters. Then on June 2, the agenda for the June 3, regular meeting was amended by addition of an item relating to reconsideration of the failed ordinance. At that meeting, the motion for reconsideration did receive a second, and after further public discussion, the ordinance was unanimously approved. Permits for the project were then issued and work began.
Lauer filed this action to enjoin the project on the grounds that the enabling ordinance authorizing it was defective for failure of the City Council to follow both state and city procedures. Injunctive relief was denied and an appeal from that decision followed. However, by the time that appeal was heard, the project had been completed and the Delchamp's store was operating. In these circumstances, this court held that the question of whether or not the injunction had properly been denied was moot because the acts sought to be enjoined had already been done, and thus could no longer be prevented from being done. As a consequence, it was unnecessary for this court to resolve the issue of whether or not the ordinance had been properly enacted. Lauer v. City of Kenner, 445 So.2d 1308 (La.App. 5th Cir.1984). Lauer then amended his petition to allege that as a consequence of the improper enactment of the ordinance, the business of ["Jacques Lauer d/b/a Sun Basket, Inc."] had been adversely affected in the amount of nine-million dollars, and he sought judgment against the city and Folmar in this amount. His allegation against Folmar was that it had improperly lobbied members of the Council to approve its requested P.U.D. His allegation against the city was that its procedurally improper approval of *770 the P.U.D. had allowed the opening of a competitive business which caused his own business to fail.
At the close of trial on the merits, on July 30, 1988, Folmar moved for dismissal on the grounds that no evidence had been presented to show that it had engaged in improper lobbying. The motion was granted and a judgment to that effect was signed on August 4, 1988. No appeal was taken from that judgment and no error is urged here as to that determination. The case against the city was taken under advisement, and final judgment was rendered in its favor on September 30, 1988. This appeal followed.
The first procedural defect urged by Lauer is that the ordinance was not advertised three times before being brought before the Council as required by La.R.S. 33:4724. This assertion is without merit. As pointed out above, the City has created a Zoning and Planning Commission by authority of La.R.S. 33:4726. Under this statute, this Commission is required to publish notice of its public hearings, three times, hold these hearings, and then make recommendations to the Council. Upon receipt of the recommendation, the Council then votes to approve or reject it. Although sec. 33:4724 provides that public hearings by the legislative body on zoning matters are to be advertised three times, that statute does not mandate such hearings, Lauritsen v. City of New Orleans, 503 So.2d 580 (La.App. 4th Cir.1987).
In the present case, the hearing before the Commission was properly advertised and held, and recommendation for approval of the ordinance was made to the Council. In this court's opinion, this satisfied the notice requirements for the ordinance. While the Council did publish only once a notice that the ordinance was "introduced for publication and public hearing on [its] final adoption," we do not construe this language as meaning anything more than that the ordinance would be taken up at a public meeting. As held in Laurtisen, supra, there is no requirement that another "public hearing" be held by the legislative body once such a hearing has already been held by the Zoning Commission. We therefore conclude that the failure of the Council to advertise the matter three times means that they did not intend to hold another "public hearing" as contemplated in La.R.S. 33:4724. Since there was no requirement for such an additional hearing, we hold that proper notice of the ordinance was given.
Lauer next contends that notice was also improper under Art. II, sec. 2.13(c) of the City Charter, which provides for publication twice of all ordinances specifically dealing with "zoning or rezoning, or changing zoning districts or classifications". We reject this assertion as well. The ordinance in question did not zone, rezone or change any zoning districts or classifications. The bulk of the affected property was zoned C-2, and this classification permits buildings of over 25,000 square feet with Council approval. The second lot was zoned R-1, a classification which prohibits commercial uses. The ordinance did not rezone or reclassify this lot, but simply permitted commercial use of a ten foot strip, while reserving the remainder for a public park. Further, the proposal was submitted to the Commission as a Planned Unit Development as per Art. XX, sec. 20.08, of the Comprehensive Zoning Ordinance. This procedure only provides for authorization of uses not permitted by the use regulations in the district; it does not provide for rezoning or changes in districts or classifications. We conclude, therefore, that the notice requirements of Art. II, sec. 2.13(c), were inapplicable to the ordinance in question here.
The next argument is that reconsideration of the ordinance after its initial failure was improper under the Council's Rules 40 and 41, which provide as follows:

RECONSIDERATION
RULE 40. A vote or question may be reconsidered at any time during the same meeting. A motion to reconsider must be made and seconded by members who voted on the prevailing side of the question to be reconsidered. Upon motion so *771 made and seconded, a vote shall be taken without debate. If the motion passes, debate shall be reopened on the main issue. A motion for reconsideration, having been once made and decided in the negative, shall not be renewed, nor shall a motion to reconsider be reconsidered.
RULE 41. If a motion to reconsider was not made at the same meeting during which the initial vote was taken, the question may be reconsidered at the first regular or special meeting held thereafter. The question must first be properly placed on the Council agenda by any Council Member under "unfinished business." The motion to reconsider shall be made and seconded and all procedures shall be as provided in Rule 40.
Lauer first asserts that because a motion to reconsider was made at the same meeting in which the ordinance was voted down, further reconsideration was precluded, even though the motion received no second. Our reading of Rule 40 is otherwise. That rule provides that such a motion, "once made and decided in the negative" shall not be renewed. Rule 26, of the Council further provides that "no motion shall be put or debated in the Council ... unless it be seconded". Taken together these rules mean that a motion does not come before the Council without a second, and therefore cannot be decided either in the negative or the positive. Thus the unseconded motion for reconsideration at issue here is as though it had never been made, and such a motion could properly be made at a subsequent meeting under Rule 40.
Lauer urges further, however, that because such a motion was not made at the special meeting of May 29, it could not be made at the next regular meeting of June 3, as per Rule 41. That rule states that a motion to reconsider may be made "at the first regular or special meeting held therafter". On its fact the rule permits reconsideration at either the next regular meeting or the next special meeting. Were the rule intended to mean that reconsideration could be had only at the next meeting, whether that meeting was regular or special, it would have been so worded.
This brings us to Lauer's next allegation which is that the Council acted arbitrarily and without reasonable cause in passing the ordinance. It is well settled that a zoning ordinance is presumed to be valid, and the courts will not substitute their judgment for that of a legislative body unless there is an abuse of discretion or excessive use of the police power, Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1975). Although spot zoning is highly suspect, such zoning exists only when a city creates inside of a large area of property one parcel relegated to a different zoning classification, Id.
In the present case, there is no spot zoning. The major portion of the tract in question was and still is zoned C-2. As already shown, this classification permits buildings of over 25,000 square feet when the Council determines that such a structure would not adversely affect the surrounding neighborhood. The ten foot strip of the R-1 lot is also apparently still so zoned, while the remainder of the tract was to be used by the city for a park. Parks are one of the permitted uses in R-1 districts. This clearly was not spot zoning.
As to reasonable exercise of the police power, Lauer asserts that the use variances permitted here simply did not relate to such power. We do not find any basis for this assertion. The Comprehensive Zoning Ordinance was enacted pursuant to state law relating to the police powers of municipalities, and it is not suggested here that the entire plan, or the C-2 zoning classification, is defective. The C-2 classification permits buildings over 25,000 square feet when the Council finds that this would have no adverse effect. Had the Council denied the present variance, there could be no question that this decision would have rested on the police power of the city. It would, in this court's opinion, be absurd to hold, on the other hand that the granting of a variance under the same ordinance would be an act outside of that same police power, and we refuse to do so. Neither do we find that Lauer has *772 borne his burden of showing that the Council's action was arbitrary and capricious. The record shows that there was substantial public discussion with surrounding property owners. While these owners originally expressed reservations as to the grocery, by the time of final passage the only remaining opponents were Lauer and Raymond Locatta (who has since died with no person substituted for him in this suit). While the transcript of the Zoning Commission hearing is not of record, neither has Lauer presented any evidence to show that either the Commission's recommendation, or the Council's action, were based on arbitrary or capricious considerations. Lauer has thus failed to make the requisite showing to have the ordinance declared invalid by this court.
Lauer finally contends that because of the Council's improper action, his business was adversely affected. We have already determined that the ordinance was properly enacted, and thus whatever effect it might have had on Lauer's business is of no consequence.
However, even had the ordinance been defective, we would still affirm judgment in favor of the City because Lauer's alleged damages from business competition are not compensable in the circumstances of this case. Under La.Code Civ.Pro. art. 681, an action can be brought only by a person having a real and actual interest in a case. This article has been interpreted to mean that in cases questioning the actions of public boards, the plaintiff must have an interest which is distinct from the interests of the public at large, League of Women Voters v. City of New Orleans, 381 So.2d 441 (La.1980). In Barkman v. Zoning Appeals Board of Jefferson Parish, 442 So.2d 1237 (La.App. 5th Cir.1983), a panel of this court maintained an exception of no right of action as to a party who had sold his property which adjoined another lot for which a contested use variance had been granted.
In this case, Lauer's property is about one mile from the tract at issue here. There was no evidence to indicate that his property value was in any way affected by the use variance or that traffic or population density would cause harm to his property. Neither has he shown that the size of the building in and of itself has had any impact on his property. His only complaint is instead that the use of the building as a grocery store has increased competition with his own grocery store.
We find no Louisiana case which has held that mere competitive disadvantage is insufficient to give rise to standing to contest a zoning ordinance. However, that is the rule in most other jurisdictions. See Anderson, American Law of Zoning, 3rd ed., secs. 7.28, 7.29, 27.17 and 30.03, and cases cited therein. Section 7.28, of this treatise points out that regulation of competition is not a proper function of zoning ordinances, and that when such a purpose is shown, such ordinances have generally been declared invalid. It is further noted in sec. 7.29, that attempts by local governing authorities to restrict business competition under the guise of zoning ordinances have often led to damage suits for antitrust violations.
In the present case, Lauer's only complaint is that competition from the Delchamp's grocery has hurt his grocery business. This competition is a factor shared by all other grocers in the municipality, and is therefore not distinct to him. In the factual circumstances of this case, we hold that this mere competitive disadvantage is not such a particular interest as to confer standing upon Lauer to bring this suit. Pursuant to Code Civ.Pro. art. 927, we note this defect and dismiss this appeal.
Accordingly, for the foregoing reasons the decision of the trial court dismissing the plaintiff-appellant's suit is affirmed.
AFFIRMED.