779 So.2d 1003 (2001)
Stephen Scott SEWELL
v.
James HUEY, Commissioner and President of the Board of the Orleans Levee District and Orleans Levee District.
No. 2000-CA-0385.
Court of Appeal of Louisiana, Fourth Circuit.
January 24, 2001.
*1004 Malcolm R. Petal, New Orleans, LA, Counsel for Plaintiff/Appellant.
Frank A. Milanese, and David C. Treen, James A. Nugent, Deutsch, Kerrigan & Stiles, New Orleans, LA, Counsel for Defendants/Appellees.
Richard B. Sobol, Slidell, LA, and Lolis Edward Elie, New Orleans, LA, Counsel for Intervenor/Appellee.
Court composed of BAGNERIS, TOBIAS and GORBATY, Judges.
TOBIAS, Judge.
The plaintiff, Steven Scott Sewell, appeals from a trial court judgment denying his petition for a writ of mandamus filed against the defendants, James P. Huey, president of the Board of Commissioners of the Orleans Levee District, and the Board of Commissioners of the Orleans Levee District ("Orleans Levee Board").
In 1993, the Orleans Levee Board leased a portion of South Shore Harbor on Lake Pontchartrain to Star Casino, Inc. ("Star Casino"), for the purpose of operating a riverboat casino. Pursuant to the 1993 contract of lease, the riverboat casino operator agreed to pay the Orleans Levee Board a fixed amount of annual rent, plus $2.50 per patron boarding the casino boat. In February 1995, the Orleans Levee Board, Star Casino, and Belle of Orleans, L.L.C. ("Belle of Orleans") entered into an agreement whereby Star Casino assigned its interest in the 1993 lease to Belle of Orleans, and the Orleans Levee Board consented to the assignment.
On 15 May 1996, the Orleans Levee Board passed Resolution 3 051596 ("Resolution No. 1"), conditionally approving an amendment to the 1993 lease with Belle of Orleans. The proposed amendment deleted the $2.50 per patron obligation and substituted the following language:
III. C. (1) In addition to the fixed rent provided for in paragraph A, as amended, above, Lessee agrees to pay to Lessor a base rent of $110,000 per month, plus 3 per cent of monthly gross revenues above $5.5 million, which shall be paid monthly to the Orleans Levee Board.
Resolution No. 1 stated that the purpose of the change was "to provide rent relief." It also provided:
[T]his resolution shall not become effective unless the Orleans Levee Board has, within sixty days from the date hereof, identified alternative funds to replace those funds lost under the above proposal, and should said replacement funds not be identified within sixty days, this resolution shall not go into effect.
The Orleans Levee Board failed to identify any replacement funds during the sixty-day period and, as a result, the proposed lease amendment in Resolution No. 1 never took effect.
On 17 July 1996, several days after the expiration of the sixty-day period, the Orleans Levee Board adopted Resolution No. 2-071796 ("Resolution No. 2"), again amending the lease with Belle of Orleans. *1005 The stated purpose of the amendment was to "increas[e] the amount of revenue previously enjoyed by the Board...." The amendment deleted the $2.50 per patron obligation, and provided the following substitute obligation:
In addition to [the fixed annual rent], Lessee agrees to pay to Lessor rent based on monthly Gross Gaming Revenue as follows:
a. For the period, July 1, 1996 through June 30, 2000 inclusive, an amount equal to three percent (3%) of monthly Gross Gaming Revenue, with a minimum monthly rental in the amount of $110,000.00.
b. For the period, July 1, 2000 and thereafter for the duration of the lease, an amount equal to five percent (5%) of monthly Gross Gaming Revenue, with a minimum monthly rental in the amount of $110,000.00.
Upon execution of the amendment, Belle of Orleans agreed to advance all of the fixed rent for the three quarters commencing 1 October 1996 in lieu of the quarterly payments provided for in the existing lease. In addition to the third amendment, Resolution No. 2 provided that Belle of Orleans would use its best efforts to carry out the objective of the 1996-1997 Marketing Plan regarding the marketing and construction of a restaurant at South Shore Harbor. On 19 July 1996, the Orleans Levee Board and Belle of Orleans executed the amendment provided for in Resolution No. 2. The lease, as amended pursuant to Resolution No. 2, has been in effect since that date.
On 18 August 1999, more than three years later, the plaintiff filed a petition for writ of mandamus to compel the Orleans Levee Board to cease and desist the policy of rent relief and to collect all unpaid rents from the casino since the "unauthorized" granting of rent relief. The plaintiff argued that the "forgiveness of rent" as a result of the amendment in Resolution No. 2 was, in effect, the "forgiveness of a tax," an illegal gift, and a loss of $5,000,000.00 in revenue for the Orleans Levee District. The plaintiff further asserted that the Board of Commissioners failed to comply with its own by-laws when it passed Resolution No. 2. He alleged that the board had incorporated Roberts Rules of Order in its by-laws, which required the board to either rescind or reconsider and reject Resolution No. 1 before adopting conflicting Resolution No. 2. Finally, the plaintiff alleged that the Orleans Levee Board's failure to exercise its duty to collect [unpaid rents] to prevent flood and hurricane damage put him and his home at risk.
In response, the Orleans Levee Board answered the petition and filed peremptory exceptions of no right of action, no cause of action, and nonjoinder of a party and the declinatory exception of [unauthorized] use of summary proceedings. The Belle of Orleans intervened in the mandamus suit on 15 September 1999 and filed an exception of no right of action in this Court on 30 March 2000.
A hearing was held on 21 September 1999, but no testimony was taken. After considering the pleadings, the argument of counsel, and the law, the trial court overruled the defendants's exceptions and denied the plaintiffs petition for a writ of mandamus. The trial court gave no written reasons for its judgment.
LSA C.C.P. art. 3862 provides in part:
A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice....
Mandamus is an extraordinary remedy that is to be used sparingly to compel the performance of a ministerial duty that is clearly required by law. Plaquemines Parish Council v. Petrovich, 629 So.2d 1322 (La.App. 4 Cir.1993), writ denied, 94-0151 (La.3/11/94), 634 So.2d 390. A writ of mandamus may not be issued to compel a public official to exercise discretionary authority. Connick v. City of New Orleans, 543 So.2d 66 (La. App. 4 Cir.1989).
*1006 A taxpayer may resort to judicial authority to enjoin public servants from transcending their lawful powers or violating their legal duties in any unauthorized manner that would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. Alliance for Affordable Energy v. Council of the City of New Orleans, 96-0700 (La.7/2/96), 677 So.2d 424, 428. The fact that a taxpayer's interest may be small and insusceptible of accurate determination is not sufficient to deprive him of the right. Id. However, a taxpayer will not be allowed to compel the performance of a public duty by mandamus absent a showing of some special interest which is separate and distinct from the interest of the public at large. League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441, 447 (La. 1980).
In League of Women Voters, the plaintiffs, the League and two taxpayers, sought a mandamus to compel the defendants, the City of New Orleans, the New Orleans City Council, the Orleans Levee Board, the Board of Assessors of Orleans Parish, and the Louisiana State Auditor to perform certain governmental functions relative to a 1978 tax millage readjustment and the raising of taxes. The Supreme Court maintained the defendants's exception of no right of action, reasoning that the plaintiffs were not seeking to restrain an increase in their tax burden, but were seeking to compel action by public officials which would increase taxes. League of Women Voters, 381 So.2d at 447. Because the plaintiffs were trying to compel the defendants to perform certain functions, the plaintiffs had to show that they had "some special interest which is separate and distinct" from the general public. Id. The Court found that the plaintiffs's general allegations of jeopardy to their interests in receiving sufficient fire, police, and flood protection services were not peculiar to them, but were common to the public at large. Id. Hence, the defendants's exception of no right of action was maintained because the plaintiffs failed to demonstrate a special or particular interest distinct from the public where the plaintiffs were seeking government action.
Like the plaintiffs in League of Women Voters, the plaintiff here seeks to compel the Orleans Levee Board to cease its policy of "rent relief" and to collect any unpaid rents from the Star Casino and/or its successor, Belle of Orleans, from the date the amendment proposed in Resolution No. 2 went into effect. This being the case, the plaintiff must demonstrate that he has a special interest which is separate and distinct from the general public.
The plaintiff, an Orleans Parish taxpayer and property owner, claims that he is entitled to mandamus relief merely because his home and life are at considerable risk due to the Orleans Levee Board's failure to collect funds for hurricane and flood protection and that his "right not to drown" is an individual rather than a general right. The plaintiffs allegations of jeopardy to his interest in hurricane and flood protection and a right not to drown are not, however, peculiar to him. Such interests are common to the public at large.
The exception of no right of action tests whether the plaintiff has a real interest in enforcing the matter asserted or whether he has the capacity to file suit. Smith v. Dison, 95-0198 (La.App. 4 Cir. 9/28/95), 662 So.2d 90. The plaintiff argues in this appeal that the issue of his standing to pursue the mandamus action is not before this Court because the defendants did not seek writs, appeal or answer his appeal to review the trial court's judgment overruling the Orleans Levee Board's peremptory exceptions. We disagree. La. C.C.P. art. 2133 B provides that:
A party who does not seek modification, revision or reversal of a judgment in an appellate court, including the supreme court, may assert in support of the judgment, any argument supported *1007 by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.
Furthermore, La. C.C.P. art. 927 provides that the failure to disclose a right or interest in the plaintiff to institute the suit may be noticed by an appellate court of its own motion. After reviewing the record, we find the plaintiff has not demonstrated a special interest separate and distinct from the general public necessary for standing to seek a writ of mandamus to compel the Orleans Levee Board either to cease the policy of "rent relief" or to collect "unpaid" rents from Star Casino and/or Belle of Orleans.
We find no conflict between Resolution No. 1 and Resolution No. 2 adopted by the Board of Commissioners. Resolution No. 1, by its literal terms, expired on 14 July 1996 because the Board of Commissioners failed to identify replacement funds for the funds that were to be lost as a result of the authorized amendment of the lease. Resolution No. 2 was a substitute authorization for an amendment to the lease to replace the expired Resolution No. 1.
The plaintiffs reliance on the case of State ex rel. Broussard v. Gauthe, 265 So.2d 828 (La.App. 3 Cir.), writ refused, 263 La. 105, 267 So.2d 211 (1972) for the proposition that a public body that has adopted Roberts Rules of Order is bound by them is misplaced. In State ex rel. Broussard v. Gauthe, the plaintiff, Broussard, filed a right to office suit against the Lafayette Parish School Board pursuant to La. R.S. 42:76 et seq., the Intrusion into Office Statute, alleging that he was rightfully entitled to the office of Superintendent of Lafayette Parish Schools and that the defendant, Gauthe, was unlawfully in possession of the office. The Lafayette Parish School Board had elected Broussard at a board meeting on 17 November 1971 by a vote of 7 to 6. After the vote was taken, the school board president ruled that no superintendent had been elected because neither candidate had received 8 votes. The board challenged the president's ruling and the vote on the motion to overrule him was 7 for and 6 against. The president announced that the motion to overrule him had failed because it did not receive the required two-thirds votes. At the school board's next regular meeting on 1 December 1971, a motion was made and seconded that the portion of the minutes of the meeting of 17 November 1971, regarding the appointment of Broussard as Superintendent of Schools, be rescinded and annulled. The motion carried. A motion was then made and seconded that the school board appoint a superintendent. Broussard and Gauthe were both nominated and, following the vote, Gauthe won by one vote. In determining whether Broussard was elected and removed from office lawfully, the court had to consider whether the school board had followed proper parliamentary procedure. The court noted that because the school board had adopted Roberts Rules of Order the rules were applicable. The court found that pursuant to Roberts Rules, the president had no authority to defeat the board's motion electing Broussard by ruling that it did not pass and that the motion to overrule the president needed only a majority of the total votes, not two-thirds. The Court concluded that because Broussard had been lawfully elected to the office of superintendent at the 17 November 1971 school board meeting, he could not be removed except for cause and in accordance with the procedures set forth in La. R.S. 17:54.
Although Roberts Rules of Order are made a part of the by-laws of the Board of Commissioners, only a member of the Board of Commissioners may object to the board's failure to follow parliamentary procedure as provided by Roberts Rules. For this Court to embrace plaintiffs suggestion could ultimately give a person a cause of action to object to a law of the legislature or an ordinance of a state board, political subdivision, or agency if the person could find a technical violation of the parliamentary rules of the respective legislative body. Parliamentary *1008 law is generally intended to provide rules of decorum and procedure to members of a legislative body, board, or entity so that the body's business may be conducted efficiently, expeditiously, and civilly. Plaintiffs argument is, therefore, without merit.
In view of our conclusions that the plaintiff has no standing to seek a writ of mandamus in this matter and that he cannot invoke parliamentary procedure rules to attack the Orleans Levee Board's resolutions, we find the trial court properly denied his petition. The defendants's argument that the equitable doctrine of laches is applicable and bars the plaintiffs suit is moot.
Accordingly, for the reasons stated above, we affirm the judgment of the trial court.
AFFIRMED.