Madro Bandaries, MADRO BANDARIES, P.L.C., 938 Lafayette Street, Suite 204, Post Office Box 56458, New Orleans, LA 70113, COUNSEL FOR PLAINTIFF/APPELLANT
Mark D. Macnamara, Sunni J. LeBeouf, Cherrell S. Taplin, CITY OF NEW ORLEANS, 1300 Perdido Street, Suite 5E03, New Orleans, LA 70112, COUNSEL FOR DEFENDANT/APPELLEE
(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins )
Judge Rosemary Ledet *1238 This is a mandamus suit. The trial court sustained a peremptory exception of no right of action filed by the defendant, the City of New Orleans, through its Director of Safety and Permits, Jared E. Munster ("the City"), and dismissed the suit. The plaintiffs, Niran Gunasekara and Suzanne O'Neill (the "Taxi Cab Drivers"), appeal. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
The Taxi Cab Drivers filed a petition for writ of mandamus directed to the Department of Safety and Permits of the City of New Orleans (the "Department"), seeking to have transportation network company ("TNC")[1] vehicles regulated in the same manner as taxi cabs. The Taxi Cab Drivers alleged that the Department requires taxi cab drivers and owners to submit their vehicles for inspection pursuant to certain New Orleans Code of Ordinances and that such inspection requires an application and a payment of a fee. The Taxi Cab Drivers further alleged that the Department did not enforce these requirements for TNC vehicles. The Taxi Cab Drivers contended that "[t]his failure of the Department ... to enforce this ministerial duty puts the public at risk, causes extra time constraints and expense to taxicab drivers and creates an un-level playing field as to competition, as well as denying taxidriver[s] equal protection under the law." In response, the City filed an exception of no right of action.
Granting the City's exception of no right of action, the trial court found that the Taxi Cab Drivers lacked a special interest in requiring such enforcement. In so doing, the trial court provided the following written reasons for judgment:
An action can only be brought by a "person having a real and actual interest which he asserts." [ La. C.C.P. art. 681.] A citizen and taxpayer must show a special interest in the performance sought of the public officer, which is separate and distinct from the interest of the public at large. The special interest alleged by taxicab drivers is a competitive disadvantage. Even if the Code of Ordinance Articles governing TNCs were more strictly enforced by the City, Petitioners would still be required to comply with safety inspections for taxicab drivers required under the same Code.
Courts have held mandamus relief was appropriate where petitioners expressed a special interest where they would suffer harm in the enforcement of a statute by a public officer or agency. There is a significant amount of precedence on whether or not competitive harm qualifies as a special interest. Courts have consistently held competitive harm does not qualify as a special interest, and Petitioners alleging competitive harm do not have standing to bring a writ of mandamus. Petitioners' allegation of a competitive disadvantage is an insufficient special interest to maintain a cause of action. Therefore the City's exception of no right of action is sustained.
The Taxi Cab Drivers appealed. This court converted the appeal to a writ (due *1239 to the lack of decretal language), granted the writ, denied relief, and remanded to allow the Taxi Cab Drivers leave to amend their petition pursuant to La. C.C.P. art. 934. Gunasekara v. City of New Orleans through Munster , 17-0914 (La. App. 4 Cir. 3/28/18), 243 So.3d 623 (" Gunasekara I "). In so doing, we reasoned as follows:
When seeking to compel the action of a public official, "the plaintiff must demonstrate that he has a special interest, which is separate and distinct from the general public." Sewell v. Huey , 2000-0385, p. 3 (La.App. 4 Cir. 1/24/01), 779 So.2d 1003, 1005. In Sewell , plaintiff filed a petition for writ of mandamus directed to the Orleans Parish Levee Board ("the Board"), which had granted rent relief to a casino. Plaintiff argued the Board's "failure to exercise its duty to collect [unpaid rents] to prevent flood and hurricane damage put him and his home at risk." Id. This Court found plaintiff had no right of action as plaintiff failed to assert a "special interest," reasoning that "plaintiff's allegations of jeopardy to his interest in hurricane and flood protection and a right not to drown are not, however, peculiar to him. Such interests are common to the public at large." Id. at 1006.
The City advances the same argument here; that is, Appellants have failed to allege a special interest in requiring the Department to enforce the relevant sections of the City Ordinances against TNCs.
We agree that Appellants have no standing to seek mandamus relief by arguing the Department's failure to regulate TNCs in the same manner as taxi cabs puts the public at risk. As in Sewell , the Department's failure in this regard places the public at large at risk, such that Appellants can assert no "special interest."
Appellants' argument that the Department's inaction places them at a competitive disadvantage also fails. Although Appellants disputed its applicability to the facts of this case, we find the City's reliance on Lauer v. City of Kenner , 536 So.2d 767 (La. App. 5[th] Cir. 1988), is not misplaced. In Lauer , plaintiff sought damages resulting from declined business after the City of Kenner granted a land use variance to plaintiff's business competitor. Id. at 768. In affirming the district court's judgment in favor of the City of Kenner, the Fifth Circuit reasoned:
In the present case, Lauer's only complaint is that competition from the [business competitor's] grocery has hurt his grocery business. This competition is a factor shared by all other grocers in the municipality, and is therefore not distinct to him. In the factual circumstances of this case, we hold that this mere competitive disadvantage is not such a particular interest as to confer standing upon Lauer to bring this suit.
Id. at 772. Though not a case concerning an exception of no cause of action, the same issue of standing to bring suit is implicated. Here, in order to bring suit, Appellants were required to show that they had standing by virtue of a special interest. The Court in Lauer squarely held that "competitive disadvantage" is insufficient to confer standing, as that disadvantage was not unique to plaintiff, but shared by all other similarly-situated grocers.
Here, only two New Orleans [Certificates of Public Necessity] CPNC taxi cab drivers have filed suit, asserting a competitive disadvantage presented by the Department's failure to enforce the City Ordinance, as written. However, as the Court did in Lauer , we find that *1240 mere competitive disadvantage does not confer the requisite standing, as this disadvantage is shared by all other taxi cab drivers in the City of New Orleans.
Gunasekara I , 17-0914, pp. 4-6, 243 So.3d at 627-28.
On remand, the Taxi Cab Drivers amended their petition primarily to add class action allegations;[2] otherwise, the allegations of their petition remained essentially unchanged. In response, the City renewed its exception of no right of action. Granting the City's renewed exception, the trial court orally reasoned that "economic disadvantage" was insufficient to confer standing. In so finding, the trial court cited to its reasons for judgment in granting the prior exception. This appeal followed.
DISCUSSION
The sole issue on appeal is the correctness of the trial court's ruling, granting the exception of no right of action. "The standard of review of a ruling on an exception of no right of action, which presents a question of law, is de novo. " State v. Thompson , 16-0409, p. 13 (La. App. 4 Cir. 11/23/16), 204 So.3d 1019, 1029.
The following procedural articles govern an exception of no right of action:
• La. C.C.P. Art. 681 provides "[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts."
• La. C.C.P. Art. 927(A)(6) provides that an exception of "[n]o right of action, or no interest in the plaintiff to institute the suit" is a peremptory exception.
• La. C.C.P. Art. 923 provides that "[t]he function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action."
N. Clark, L.L.C. v. Chisesi , 16-0599, pp. 4-5 (La. App. 4 Cir. 12/7/16), 206 So.3d 1013, 1016.
The pertinent jurisprudential principles governing the review of a ruling on an exception of no right of action are as follows:
• An exception of no right of action is a threshold device to terminate a suit brought by one who has no interest in judicially enforcing the right asserted.
• The function of an exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit.
• When the facts alleged in the petition provide a remedy under the law to someone, but the plaintiff who seeks the relief for himself or herself is not the person in whose favor the law extends the remedy, the proper objection is no right of action, or want of interest in the plaintiff to institute the suit.
*1241 • The burden of proof of establishing the exception of no right of action is on the defendant-exceptor.
• The exception of no right of action does not raise the question of the plaintiff's ability to prevail on the merits or the question of whether the defendant may have a valid defense.
• On consideration of an exception of no right of action the averments of fact in the pleading must be taken as true in the absence of evidence to the contrary.
• In examining an exception of no right of action, a court should focus on whether the particular plaintiff has a right to bring the suit while assuming that the petition states a valid cause of action for some person.
• The exception of no right of action presents a question of law; thus, as noted earlier, appellate review of that exception is de novo and involves determining whether the trial court was legally correct in sustaining such exception.
• In reviewing a trial court's ruling on an exception of no right of action, an appellate court begins with an examination of the pleadings.
N. Clark , 16-0599, pp. 5-6, 206 So.3d at 1016-17 (internal quotation marks and citations omitted).
The Taxi Cab Drivers acknowledge, as we held in Gunasekara I , that in order for them to have a right of action (standing), they must have a special and peculiar interest apart from the interest of the general public.[3] According to the Taxi Cab Drivers, their special, particular, or peculiar interest, giving them a right of action, is established based on their allegations in Paragraph 6 of the amended petition, which states as follows:
[N]ot one transportation network company vehicle, also identified as app-based services such as Uber and Lyft, has even been required by the "bureau" to be inspected. This failure of the Department of Safety and Permits to enforce this ministerial duty puts the public at risk, causes extra time constrains [sic] and expense to the taxicab drivers and creates an un-level playing field as to competition, as well as denying taxi drivers equal protection under the law. Plaintiffs are clearly burdened with extra costs of compliance that are not enforced as to transportation network companies. The New Orleans City Council, as well as Louisiana law, have delegated a duty to the "bureau" to enforce the ordinances as provided to them. The "bureau" is allowed no discretion by the plain terms of the ordinances. As such, the duty is ministerial and a writ of mandamus is proper in this dispute to contest the manner in which the "bureau" fails to act.
The Taxi Cab Drivers further contend that the trial court erred in focusing on damages-competitive disadvantage-as part of its analysis of whether the Taxi Cab Drivers stated a special and peculiar interest. They contend that damages are not a factor in the analysis of whether they have a right of action; rather, they contend that the appropriate standard is whether they *1242 have a special interest, which they contend they have sufficiently plead.
The City counters that the Taxi Cab Drivers, though given an opportunity to amend their petition, have failed to assert anything beyond an alleged competitive disadvantage. The City emphasizes that this court has already decided that an alleged competitive disadvantage is insufficient to confer a right of action here. We agree.
Contrary to the Taxi Cab Drivers' contention, the trial court's focus on the Taxi Cab Drivers' damages-competitive disadvantage-was not misplaced. The plaintiffs' damages are relevant in determining whether they have a special interest that would confer a right of action to file a mandamus action. Explaining this point, one commentator observes as follows:
A plaintiff alleging breach of contract or tortious injury by a public official clearly has standing to sue unless barred by a constitutional, statutory, or jurisprudential doctrine of sovereign immunity or other, more specific bars .... Also, where a public official grants a contract to a party who has not made a legal bid, a party who has made a legal bid has standing to sue for rescission. Additionally, public employees have standing to compel mayors and council members to approve and disburse pay increases required by statute. What these cases have in common is the special or peculiar interest which sets the individual apart from the general public. That is, some act or omission of the state has harmed or threatens to harm the plaintiff individually and does not harm the public generally. Thus, when the injury sustained or the right sought to be enforced is private, standing should be measured by the standards involved in a lawsuit between two private parties.
J. Keith Hardie, Jr., League of Women Voters v. City of New Orleans: Standing in Suits Against Public Officials , 46 LA. L. REV. 169, 172 (1985).
As the Louisiana Supreme Court observed, the reason it imposed the "special interest" requirement on a plaintiff in a mandamus action was "to insure a fair presentation and development of the issues by truly adverse parties." Louisiana Associated Gen. Contractors, Inc. v. Calcasieu Par. Sch. Bd. , 586 So.2d 1354, 1358 (La. 1991). The Supreme Court added that "[w]ithout a showing of such a personal and special interest in mandamus cases, [it] feared interference by the judiciary would surpass the authority allocated by the tripartite system." Id.
Neither of the interests cited by the Taxi Cab Drivers-public safety and competitive disadvantage-is sufficient to confer standing. The interest of public safety is a risk shared by the public at large; it is not unique to the Taxi Cab Drivers. "[M]ere competitive disadvantage does not confer the requisite standing, as this disadvantage is shared by all other taxi cab drivers in the City of New Orleans." Gunasekara I , 17-0914, p. 6, 243 So.3d at 628.
Finally, although the Taxi Cab Drivers, on remand, added class action allegations, it is well settled that "[a] class action is simply a procedural device; it confers no substantive rights." Galjour v. Bank One Equity Investors-Bidco, Inc. , 05-1360, p. 7 (La. App. 4 Cir. 6/21/06), 935 So.2d 716, 723.[4] As one commentator has *1243 explained, "class standing" is not recognized:
There is no such thing as "class standing." This precept is of a piece with black letter doctrine that, as a procedural mechanism, a class action enlarges no substantive rights, eliminates no defenses to individual claims, and creates no Article III case or controversy where none would otherwise exist.
1 MCLAUGHLIN ON CLASS ACTIONS § 4:28 (15th ed. 2018). The addition of class action allegations to the petition, thus, could not confer standing on the Taxi Cab Drivers. Accordingly, the trial court correctly sustained the City's peremptory exception of no right of action and dismissing the Taxi Cab Drivers' suit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

A TNC is "an organization that connects passengers with drivers using their personal vehicle for purposes of for-hire transportation services by means of a TNC digital network." Rasier, LLC v. City of New Orleans , 16-0930, p. 2 (La. App. 4 Cir. 6/14/17), 222 So.3d 806, 810 (internal quotation marks omitted). As the Taxi Cab Drivers point out in their brief, TNCs are also known as "app-based service" companies, examples of which include Uber and Lyft.

In the amended petition, the Taxi Cab Drivers defined the class they purport to represent as follows:
[A]ll New Orleans CPNC "taxi cab drivers", licensed by the City of New Orleans and who are required to have their vehicles inspected by the Department of Safety and Permits, a city department under the direction of Jared E. Munster and are forced to engage in other acts required by city ordinance that are not enforced by the City of New Orleans as to TNC for-hire persons.
The Taxi Cab Drivers also alleged that "there are around 1,400 other and similarly situated persons, both natural and juridical in Orleans Parish, with Plaintiffs also seeking to represent them as class representatives" and that "the customs and practices challenged in this action apply equally to Plaintiffs and all members of the similarly situated, proposed class."

Indeed, the Taxi Cab Drivers allege in their amended petition the following:
Defendant's failure to enforce performance of it's [sic] duty represent[s] a special, peculiar, or financial interest common only as to Plaintiffs and the putative class, and is a duty not due any other citizens of New Orleans .... Plaintiffs' interest and concern in this respect is one that is common to no other citizens with Plaintiffs' pleading, herein, demonstrating their special, particular, or peculiar interest in having these laws enforced that is not also common and peculiar to others. (See: State ex rel. Schoeffner v. Dowling , 158 La. 706, 104 So. 624 (1925) ).

See also Jones v. Capitol Enterprises, Inc. , 11-0956, p. 29 (La. App. 4 Cir. 5/9/12), 89 So.3d 474, 493 (quoting Galjour , supra ) ; Andry v. Murphy Oil, U.S.A., Inc. , 97-0793, p. 2 (La. App. 4 Cir. 4/1/98), 710 So.2d 1126, 1128-29 (observing that "[a] class action is no more than a procedural device"); Marshall ex rel. Minor Children v. Air Liquide-Big Three, Inc. , 08-0668, p. 6 (La. App. 4 Cir. 12/17/08), 2 So.3d 541, 546.