935 So.2d 716 (2006)
Roland GALJOUR, Individually and on Behalf of all Others Similarly Situated.
v.
BANK ONE EQUITY INVESTORS-BIDCO, INC., Seaport Capital Partners, II L.P., Surgient Networks, Inc., David McCrory, Kevin Brandon, Andrew Meyers, Jim Collis, Michael Kirby, Ronald Hardy and James Roussel, Jr.
No. 2005-CA-1360.
Court of Appeal of Louisiana, Fourth Circuit.
June 21, 2006.
*718 Joseph N. Mole, Miles P. Clements, Kerry J. Miller, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, for Plaintiff/Appellant.
Thomas K. Potter, III, Amy L. Glovinsky, Coleman D. Ridley, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, for Defendants/Appellees (Seaport Capital Partners, II, L.P., David McCrory, Kevin Brandon, Andrew Meyers, Jim Collis, Michael Kirby, Ronald Hardy, and James Roussel, Jr.).
Robert S. Rooth, Douglas L. Grundmeyer, Peter J. Rotolo, III, Chaffe McCall, *719 L.L.P., New Orleans, LA, for Defendant/Appellee (Bank One Equity Investors-Bidco, Inc.).
(Court composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR.).
PATRICIA RIVET MURRAY, Judge.
The issue in case is whether the trial court properly denied the motion to certify this shareholder breach of fiduciary duty suit as a class action. Answering that question in the affirmative, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
This suit arises out of the April 2003 merger of two privately-held companies: ProTier Corporation ("ProTier") and Surgient Networks, Inc. ("Surgient"). The plaintiff, Roland Galjour, brought this suit in April 2004 as a class action on behalf of the common stockholders of ProTier whose stock was eliminated in the merger.[1] The defendants are ProTier's board of directors at the time of the merger and its two primary-preferred stockholders, Seaport Capital Partners, II, L.P. ("Seaport Capital") and Bank One Equity Investors-BIDCO, Inc. ("Bank One").[2]
In the petition, Mr. Galjour alleges the following pertinent facts:
 In the spring of 2000, the plaintiff and other members of the class (or the persons from whom members of the class acquired their shares of ProTier common stock) invested in a new Louisiana company named Applique, Inc. ("Applique"). Applique was a start-up company headquartered in New Orleans, Louisiana.
 The plaintiff purchased 10,000 shares of Applique's common stock in February 2000 as an investment for the plaintiff and his wife. The plaintiff made this investment at or around the same time that other members of the class invested in Applique's common stock.
 In all, the members of the class, a majority of which are residents of South Louisiana, invested approximately $1,300,000 in cash for 1,300,000 shares of Applique's common stock. Some members of the class did not invest cash in Applique; rather, they had received approximately 600,000 shares of Applique's common stock in August 1999 when they co-founded the company and agreed to work for Applique and carry out its business plan.
 In the summer of 2000, Applique began discussing an investment transaction with representatives of Seaport Capital and Bank One.
 Seaport Capital insisted that Applique change its state of incorporation from Louisiana to Delaware. Accordingly, Applique was reorganized as a Delaware company named ProTier Corporation.[3]
 Seaport Capital and Bank One made their investment in ProTier in the form of preferred stock. Their shares *720 of preferred stock had a "preference" in the amount of approximately $5.4 million, which increased annually at 8%. Accordingly, if ProTier were to be sold to a third party, the first $5.4 million (plus accrued increases) in value realized from the sale (after the payment of ProTier's debts) would be recovered by these preferred shareholders. [This is referred to as the "preference amount."] Thereafter, the holders of ProTier's preferred stock and the holders of ProTier's common stock would share in the excess proceeds of the sale. In any such transaction, after the preferred shareholders had recovered their preference amount, the remaining value of the company would be shared; the preferred shareholders would receive 52% of that excess value, and the common shareholders (including the class representative) would receive 48% of that excess value. [This is referred to as the "shared portion."]
 After the issuance of the preferred stock to Seaport Capital and Bank One, management of ProTier virtually stopped all communications with the plaintiff and the other members of the class. The plaintiff received no financial statements or other information.
 After the defendants negotiated their deal [i.e., the merger] with Surgient,[4] the defendants who were directors of ProTier sent an "Information Statement" to the plaintiff and some other members of the class. The Information Statement indicated that a merger agreement had been entered into between ProTier and Surgient, that in the merger only the preferred shareholders of ProTier would receive any value, and the shared portion would be eliminated.
The Information Statement includes the following explanation as to why ProTier's common shareholders received no consideration in the merger: "[g]iven the aggregate value of the Surgient common stock to be issued in the merger and the aggregate liquidation preference of the ProTier preferred stock, the common stock will not receive any consideration in the merger." The Information Statement also explains that the shares of common stock would be cancelled, extinguished, and cease to exist without payment of any consideration.
In the petition, Mr. Galjour alleges that defendants breached their fiduciary duties of care, loyalty, and candor by causing ProTier to enter into the merger agreement with Surgient. He further alleges that defendants enriched themselves by appropriating value that belonged to the members of the class. He still further alleges that "[t]he plaintiff and other members of the class are entitled to recover from Surgient (the merged corporation) and the other defendants an amount in cash equal to the value of their ProTier common stock that was extinguished by the merger."
On March 16, 2005, the trial court held a hearing on Mr. Galjour's motion to certify the class. In connection with that motion, the parties entered a joint stipulation to the following facts:
1. During 1999 and 2000, [Mr.] Galjour and others bought or received as compensation for services common stock of Applique Corporation ("Applique").
2. In August 2000, Applique reorganized under Delaware law, and changed its name to ProTier Corporation ("ProTier").

*721 3. ProTier entered into a merger agreement with Surgient Networks, Inc. ("Surgient"), a Delaware corporation, on April 10, 2003. On April 30, 2003, pursuant to the merger agreement, ProTier was merged with Surgient.
The parties also stipulated to the introduction of Mr. Galjour's deposition and various other documents. The documents establish that in the merger ProTier's preferred shareholders received shares of Surgient common stock; however, ProTier's common shareholders received nothing of value for their stock. The documents further establish that at the time of the merger ProTier had approximately fifty common stockholders and that the identity of all the stockholders was known.
On May 27, 2005, the trial court rendered judgment denying Mr. Galjour's motion for class certification. In its reasons for judgment, the trial court stated:
The putative plaintiffs are a group of Southern Louisiana investors who invested in Applique in the spring of 2000.... The putative class consists of approximately fifty persons. Although there are more than forty putative class members, defendants point out that their identities and addresses are known. Further, plaintiff admits that the putative class members are in Louisiana. The Court finds that although the number of putative plaintiffs is substantial, it does not warrant class action status.
From that judgment, Mr. Galjour appeals asserting the following three assignments of error:
(1) The trial court committed reversible error in treating this matter as a derivative action because shareholder lawsuits against directors and officers for personal losses from breaches of fiduciary duties are specifically suited to proceed as class actions.
(2) The trial court's denying certification based on numerosity lacks evidentiary support and constitutes a flagrant abuse of its otherwise great discretion.
(3) The trial court abused its great discretion and clearly erred when it failed to consider, much less recognize, that [Mr.] Galjour had established all the other prerequisites for this lawsuit to proceed as a class action.
Defendants counter that Mr. Galjour's appeal is moot and that the trial court did not err in finding Mr. Galjour failed to establish the impracticability of joinder.

DISCUSSION
Before addressing the primary issue of class certification, we address the mootness issue defendants raise and the derivative suit issue Mr. Galjour raises. Citing La. C.C.P. art. 596, defendants contend that the claims of the unnamed putative class members are barred by prescription. Because the claims of the unnamed putative class members have prescribed, defendants contend that any change in the trial court's judgment would neither serve any purpose nor have any practical legal effect. Defendants thus contend that Mr. Galjour's motion for certification is now moot. We disagree.
Article 596 is "a special provision that prevents prescription from accruing against the claims of members of a putative class action until the propriety of the class action or the member's participation in the action is determined." 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 4.12 (1999) ("Maraist & Lemmon"). This special provision, as Mr. Galjour contends, applies only to the claims of the individual class member; it does not apply *722 to the claims of the class. See Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1383 (11th Cir.1998)(recognizing the right of dismissed class member whose individual claim prescribed to appeal district court's class certification decision). Mr. Galjour's appeal of the trial court's decision denying class certification is not moot.
Turning to the derivative suit issue, Mr. Galjour contends that the trial court erred in classifying this suit as a shareholder's derivative suit. Indeed, he contends that even if he were inclined to bring a derivative suit, he lacks standing to bring one because he is no longer a shareholder. Regardless of whether this is a derivative suit or not, the same requirement of numerosityimpracticability of joinderapplies. See La. C.C.P. art. 616 (requiring to pursue a derivative suit that the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and La. C.C.P. art. 591(A)(1)(requiring to maintain a class action that the class be so numerous that joinder of all members is impracticable). For this reason, we find that the issue of whether this is a derivative suit need not be resolved.[5]
We now turn to the central issue in this case of whether the trial court erred in denying class certification. A trial court's decision denying certification is an appealable judgment. La. C.C.P. art. 592 A(3)(b)(providing that "[a] suspensive or devolutive appeal, as provided in Article 2081 et seq. of the Code of Civil Procedure, may be taken as a matter of right from an order or judgment provided for herein"). A trial court's decision denying certification is reviewed under both a manifest error and an abuse of discretion standard. Parry v. Administrators of Tulane Educational Fund, 98-2125, p. 3 (La.App. 4 Cir. 6/30/99), 740 So.2d 210, 212; Adams v. CSX Railroads, 92-1077 (La.App. 4 Cir. 2/26/93), 615 So.2d 476. The standard of review of class certification decisions is a bifurcated one. Watters v. Department of Social Services, XXXX-XXXX, p. 3 (La.App. 4 Cir. 4/19/06), 929 So.2d 267, 272. The factual findings are reviewed under the manifest error/clearly wrong standard; the trial court's discretionary judgment on whether to certify the class or not is reviewed by the abuse of discretion standard. Id. (citing Boudreaux v. State, Dep't of Transp. and Dev., 96-0137, p. 5 (La.App. 1 Cir. 2/14/97), 690 So.2d 114, 119).[6] These two standards of review correspond with the two-step process for determining whether to certify a class action. First, a trial court must find a factual basis exists to certify an action as a class action. Second, the court must exercise its discretion in deciding if certification is appropriate. Singleton v. Northfield Ins. Co., XXXX-XXXX, p. 7. (La.App. 1 Cir. 5/15/02), 826 So.2d 55, 61.[7]
*723 A class action is simply a procedural device; it confers no substantive rights. When deciding a motion to certify, a court is limited to considering whether the procedural device is appropriate. Cooper v. City of New Orleans, XXXX-XXXX, p. 3 (La.App. 4 Cir. 2/14/01), 780 So.2d 1158, 1160, [superseded by statute on other grounds]. The purpose of a class action is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representative who brings the suit, but also all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise their right to opt out of the class. Doerr v. Mobil Oil Corp., XXXX-XXXX, p. 7 (La.App. 4 Cir. 2/27/02), 811 So.2d 1135, 1141.
In order to maintain a class action, three basic elements are essential: (1) a class so numerous as to make it impracticable for all of them to join or to be joined as parties; (2) one or more adequate representatives of the class who are before the court either as plaintiffs or defendants; and (3) a "right sought to be enforced for or against the members of the class [which is] [c]ommon to all members of the class." Maraist & Lemmon, supra. These elements are codified in La. C.C.P. art. 591,[8] which has been noted to require proof of five threshold requirements: numerosity, commonality, typicality, adequacy of representation, and identifiability. Howard v. Willis-Knighton Medical Center, 40,634, p. 26 (La.App. 2 Cir. 3/8/06), 924 So.2d 1245, 1260. The burden is on the plaintiff, as the party seeking to utilize the class action procedure, to establish each element by a preponderance of the evidence. Royal Street Grocery, Inc. v. Entergy New Orleans, Inc., 99-3089, 99-3090, p. 6 (La.App. 4 Cir. 1/10/01), 778 So.2d 679, 684. All of these elements must be established in order for a class action to be appropriate. Billieson v. City of New Orleans, 98-1232, p. 10 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 154. The failure to establish any element precludes certification.
Numerosity is the first prerequisite for certifying a class. To satisfy the numerosity requirement, the party seeking certification must establish that the members of the class are so numerous that joinder is impracticable. The key is "impracticality, and not impossibility of joinder." Maraist & Lemmon, supra. This requirement reflects the basic function of the class action device of allowing a small number of persons to enforce claims for the benefit of many when it would be inequitable and impracticable to join every person sharing such claims at issue in the suit. Davis v. Jazz Casino Co., L.L.C., XXXX-XXXX, p. 6 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 887 (citing Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085 (1998)("Lambert")). Although identification *724 of all potential class members is not necessary, the party seeking certification must establish a definable group of aggrieved claimants. Farlough v. Smallwood, 524 So.2d 201, 203 (La.App. 4th Cir.1988). Conclusory allegations do not carry the plaintiff's burden to establish numerosity. Lewis v. Roemer, 94-0317 (La.App. 4 Cir. 9/29/94), 643 So.2d 819, 822.
Like the parallel federal rule, Rule 23(a)(1), Article 591 "is not a numerosity requirement in isolation." 1 Alba Conte and Herbert Newberg, Newberg on Class Actions, § 3.3 (4th ed. 2002)("Newberg"). The words of this statutory requirement, "a class so numerous" are immediately followed by the limiting language "as to make it impracticable for all of them to join or to be joined as parties." La. C.C.P. art. 591(A)(1). This requirement, like Rule 23(a)(1), is thus "an impracticability of joinder requirement, of which class size is an inherent consideration within the rationale of joinder concepts. The practicability of joinder must be evaluated in light of the circumstances of the particular litigation." Newberg, supra.[9]
Although the impracticability of joinder is a case-by-case determination, the jurisprudence has developed a number of factors that should be considered in making that determination, including:
1. the geographic dispersion of the class,
2. the ease with which class members may be identified,
3. the nature of the action, and
4. the size of each plaintiff's claim.
Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir.1981). A fifth factor the jurisprudence has considered is the judicial economy arising from avoiding *725 multiple actions. 5 Moore's Federal Practice, § 23.22[1][a](Matthew Bender 3d ed.)("Moore's Federal Practice"); see also Davis v. American Home Products Corp., XXXX-XXXX, XXXX-XXXX, XXXX-XXXX, p. 19 (La.App. 4 Cir. 3/26/03), 844 So.2d 242, 257, writ denied, XXXX-XXXX (La.6/27/03), 847 So.2d 1279. Analyzing those factors and applying them to the facts of this case, we find no error in the trial court's finding that the numerosity requirement is not met.

1. the geographic dispersion of the class
"Wide geographic dispersion of class members supports a finding of impracticability of joinder and, therefore, a conclusion that the numerosity requirement is satisfied." Moore's Federal Practice, § 23.22[1][d]. The trial court stated in the reasons for judgment that Mr. Galjour "admits that the putative class members are in Louisiana." The trial court's statement is supported by Mr. Galjour's petition in which he avers that the majority of the class members "are residents of South Louisiana." Given the class members are geographically concentrated in Southern Louisiana, this factor supports the trial court's finding that the numerosity requirement is not met.

2. the ease with which members of the class may be identified
"Knowledge of names and existence of members has been called the `most important' factor, precisely because it renders joinder practicable." Primavera Familienstiftung v. Askin, 178 F.R.D. 405, 410 (S.D.N.Y.1998). "When the group is small and the individual members are identifiable, joinder rarely will be impracticable." Maraist & Lemmon, supra (citing Compass v. Pan American Life Ins. Co., 443 So.2d 720 (La.App. 4th Cir.1983)).
In the reasons for judgment, the trial court notes that the identities and addresses of the more than forty class members are known.[10] The identities of the class members are established by a document in the record that lists the names of all the ProTier shareholders. In his deposition, Mr. Galjour was questioned about the document, and he conceded that the list of about fifty-one ProTier shareholders was consistent with his understanding of the total number of shareholders at the time of the merger. Moreover, the parties jointly stipulated to the authenticity of the document. The record thus supports the trial court's factual finding that the identity of all the class members is known. This factor supports a finding that joinder is practical and that the numerosity requirement is not met.

3. the nature of the action
This is a shareholder suit alleging breaches of fiduciary duty. Mr. Galjour argues that certification is appropriate because *726 the class action device is particularly well-suited for these type of actions. "`Joinder impracticality (numerosity) is rarely contested in class actions brought on behalf of shareholders or traders in publicly owned corporations.'" Zeidman, 651 F.2d at 1039 (quoting 5 J. Newberg, Class Actions § 8812, at 836 (1977)). This is because in those type of cases "class members are usually so geographically dispersed and numerous that the joinder impracticability requirement is easily satisfied." 7 Alba Conte and Herbert Newberg, Newberg on Class Actions, § 22:16 (4th ed.2002). This case, however, does not involve publicly traded securities. As noted elsewhere, all of ProTier's shares of stock are restricted securities, meaning the stock is not publicly traded. Indeed, for this reason, the identity of its stockholders at the time of the merger is known. The nature of the action thus does not support a finding of numerosity.

4. the size of each plaintiff's claim
"Some sources have suggested that the size of the claims of class members or their financial ability to bring individual suits may be relevant to the issue of joinder impracticability." Newberg, supra § 3:6. Mr. Galjour states in his brief that the class members "who lost the significant stock value by defendants' actions and omissions may well not have, nor want to risk, the equally significant resources needed to vigorously pursue individual lawsuits." However, he put on no evidence regarding either the size of the class members' claims or their financial ability to bring their own suits. For this reason, we cannot determine if this factor supports a finding of numerosity.

5. judicial economy
The judicial economy factor recognizes that certification of actions as class actions is generally appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would be more useful and judicially expedient than any other available procedures. Watters, XXXX-XXXX at p. 7, 929 So.2d at 273 (citing Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049, p. 13 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 768). The jurisprudence addressing this factor can be divided into two categories. Stephen H. Kupperman, Louisiana Class Actions, 74 Tul. L.Rev.2047, 2058-59 (2000). First, "[m]any cases specifically finding the numerosity requirement to have been satisfied usually have done so not only on the ground that substantial numbers of people may have been affected by the defendant's actions, but also on the basis that numerous people have filed or joined in various suits or have indicated a desire to assert a claim." Id. (citing Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177, 1180-81 (La.App. 1st Cir. 1992); Johnson v. E.I. Dupont deNemours & Co., 98-229, p. 7 (La.App. 5 Cir. 10/14/98), 721 So.2d 41, 44). Conversely, in the other category of cases in which numerosity has been found lacking "often rest on the proposition that, despite large potential numbers of class members, an insufficient number have indicated a dissatisfaction with the defendant or a desire to assert a claim," Id. (citing Farlough, 524 So.2d at 201-02; Olavarriette v. Tonti Properties, Inc., 95-151, p. 3 (La.App. 5 Cir. 6/28/95), 658 So.2d 25, 26-27).
This case falls in the second category in which the numerosity requirement is not met. The maximum class size is about fifty. There is only one named plaintiff in this suit, Mr. Galjour. In his deposition, Mr. Galjour could only identify three other putative class members interested in pursuing this suit. None of the class members have filed their own suit or sought to *727 intervene in this suit after the trial court's denial of certification.
In sum, the putative class members are all identified and the class members are geographically concentrated. Mr. Galjour presented no evidence regarding the size of the class members' claims or their financial ability to bring their own suits. Likewise, he presented no evidence to indicate that all the class members or a substantial number of them have been aggrieved by defendants' alleged conduct. An analysis of these factors thus establishes that the trial court did not abuse its discretion in finding the numerosity requirement is not met.
Lastly, we note, contrary to Mr. Galjour's contention, that the trial court did not err in failing to address the other certification requirements. "Consideration of numerosity alone is sufficient to establish that class action certification should be denied." Ewh v. Monarch Wine Co., 73 F.R.D. 131, 132 (E.D.N.Y.1977). Such is the case here.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] In the petition, the class is defined as "all owners of common stock of ProTier on the date that ProTier was merged into Surgient [April 10, 2003], except for those common stockholders who were directors, officers and employees of ProTier on such date."
[2] Surgient was originally named as a defendant, but was voluntarily dismissed from the suit.
[3] ProTier is a "provider of software and services that allow information technology managers to utilize their computing resources (such as CPU, storage, memory and networking) in a more efficient manner." All of Pro-Tier's shares of stock are "restricted securities," meaning that they were issued in transactions not involving public offerings.
[4] Surgient is an Austin, Texas based software company that, like ProTier, was engaged in the business of developing and marketing "virtualization" software. Like ProTier, all of Surgient's shares of stock are "restricted securities."
[5] Likewise, we do not reach the standing issue alluded to by Mr. Galjour. See 8 Glenn G. Morris and Wendell H. Holmes, Louisiana Civil Law Treatise: Business Organizations § 34.05 (1999)(discussing the "continuous shareholder" rule requirement for bringing a derivative action).
[6] It is well settled that a trial court's factual findings are reviewed under a manifest error standard of review. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). Likewise, it is well settled that a trial court's decisions regarding certification issues are reviewed under an abuse of discretion standard. See Banks v. New York Life Ins. Co., 98-0551, p. 6 (La.12/7/98), 722 So.2d 990, 993-94 (holding that an appellate court will only decertify a class when there is an abuse of a trial court's vast discretion); see also Billieson v. City of New Orleans, 98-1232, p. 8 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 152-53.
[7] Any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is subject to modification if later developments during the course of the trial so require. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 620 (La.1984).
[8] La. C.C.P. art. 591(A) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1)The class is so numerous that joinder of all members is impracticable.
(2)There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
La. C.C.P. art. 591(A).
[9] In the reasons for judgment, the trial court noted that "[a] presumption arises that joinder is impractical if more than forty class members exist." In support of this proposition, the trial court cites Vela v. Plaquemines Parish Gov't, 94-1161, 94-1162, 94-1163, 94-1164 (La.App. 4 Cir. 6/29/95), 658 So.2d 46, 48, but also cites for a contrary proposition West v. G & H Seed Co., XXXX-XXXX (La.App. 3 Cir. 8/28/03), 832 So.2d 274, and Boudreaux v. State, Dep't. of Transp. and Dev., 96-0137 (La.App. 1 Cir. 2/14/97), 690 So.2d 114. Summarizing the conflicting jurisprudence regarding the use of a presumption based on a class of greater than forty members, a commentator notes:

[In Vela,] the Louisiana Fourth Circuit Court of Appeal certified a class, stating "A presumption arises that joinder is impractical if more than 40 class members exist." This statement was unnecessary, however, for "the class range[d] somewhere between 150 and 600 members, if not more." Id. Moreover, the sole authority cited involved a class of thousands, with the court expressly noting that "whether the class is sufficiently numerous is not dependent upon a specified figure; this determination must be made upon review of the facts of each case." Adams, 615 So.2d at 481. The First Circuit specifically declined to express an opinion on the Vela presumption. See Boudreaux, 690 So.2d at 123, n. 7. The better course would be to implement no presumption, but to determine numerosity on a case-by-case basis.
Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085, 1114, n. 63. Lambert, supra, 58 La. L.Rev. at 1114, n. 63. Likewise, another commentator has criticized the use of a presumption for measuring impracticability of joinder as overly rigid and noted that the generally accepted approach is to recognize that "numerical guidelines exist but are not controlling." See also 5 Moore's Federal Practice, § 23.22[1][b] (Matthew Bender 3d ed.)("Moore's Federal Practice").
Despite the dicta language in Vela regarding the use of a presumption, this court has recognized that "no set number has been established that automatically makes joinder impracticable; rather the determination is based on the facts and circumstances of each case." Cooper, XXXX-XXXX at p. 4, 780 So.2d at 1160 (citing Dumas v. Angus Chemical Co., 25,632 (La.App. 2 Cir. 3/30/94), 635 So.2d 446, 450).
[10] On appeal, Mr. Galjour raises an issue regarding the accuracy of the trial court's factual finding that the addresses of the class members are all known. The gist of his argument is that due to the displacement of residents in Southern Louisiana caused by Hurricane Katrina the trial court's finding that the addresses are known is inaccurate. However, ProTier's records contain the addresses of the common shareholders at the time of the merger, April 2003. To the extent any of the shareholders were displaced in August 2005 due to the hurricane, it is likely they filed change of address requests with the post office. Given the relatively small number of putative class members coupled with the fact that the identity of all the class members is known, we find it unnecessary to remand in this case for the trial court to consider this potential change in circumstances. Under other circumstances, however, we might find it appropriate to remand for the trial court to consider a post-certification change in circumstances.