53 So.3d 514 (2010)
James and Rebecca WALLACE, Sandra Quillin, George and Dellarene Hodges, and Raphael and Dianne Orgeron, Individually and on Behalf of All Others Similarly Situated
v.
LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION and ANPAC Louisiana Insurance Company.
No. 2010-CA-0647.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 2010.
*516 Roy F. Amedee, Jr., Brent A. Klibert, Law Offices of Roy F. Amedee, Jr., New Orleans, LA, Terrence J. Lestelle, Lestelle & Lestelle, APLC, Metairie, LA, for Plaintiffs/Appellants.
Randall L. Kleinman Law Offices of Randall L. Kleinman, LLC, New Orleans, LA, Roger D. Marlow, Hulse & Wanek, New Orleans, LA, for Defendant/Appellee, ANPAC Louisiana Insurance Company.
Court composed of Judge JAMES F. McKAY III, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY.
MAX N. TOBIAS, JR., Judge.
One of the plaintiffs, Dianne Orgeron, appeals the trial court's denial of class certification. Finding no abuse of discretion or manifest error in the judgment of the trial court, we affirm for the following reasons.
The plaintiffs filed this matter in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines as a putative class action on behalf of an alleged class of Louisiana homeowner insurance policyholders in the parishes of Jefferson, Orleans, Plaquemines, St. Bernard, St. Tammany, Terrebonne, and Washington. A number of domestic homeowner's insurers were originally named as parties-defendants, but at the time of the trial court's judgment only American National Property and Casualty Company ("ANPAC") remained a defendant. Dianne Orgeron remained as the sole putative ANPAC class representative.
The class certification hearing took place on 17 and 19 September 2007 before Judge William A. Roe and was concluded on 3 December 2009 before Judge Kevin D. Conner. On 14 January 2010, Judge Conner rendered a judgment denying class certification, finding a lack of predominance under La. C.C.P. art, 591 B(3). It is *517 from this judgment that the plaintiff devolutively appeals.
ANPAC had approximately ten thousand homeowner's policies in effect in the region on 29 August 2005, the date Hurricane Katrina struck Louisiana. One of those policyholders was Dianne Orgeron, the class' proposed putative representative for the ANPAC policyholders.
Ms. Orgeron testified that before Hurricane Katrina, she and her husband, Raphael Orgeron, resided at 7925 Dalton Street in Metairie (Jefferson Parish) and that their home was insured by a fire and extended coverage insurance policy with ANPAC that provided for $152,200.00 in coverage for the main dwelling and "other structures" coverage in the amount of $15,200.00. Ms. Orgeron claimed that her home suffered catastrophic damage from Hurricane Katrina, including damage from wind, wind-driven rain, and flood, thereby rendering her home a total loss. She initially asserted that prior to 29 August 2005 her home had no structural damage. In August of 2006, the Army Corps of Engineers razed her Dalton Street property. Ms. Orgeron asserted that the demolition was at the behest of the Jefferson Parish Inspection and Code Enforcement Department. She later admitted that the Department had recommended demolition but did not actually require or mandate that the structure be razed. During the course of her testimony Ms. Orgeron also recanted her previous assertion that the home did not have pre-existing structural damage. Prior to Hurricane Katrina she had obtained a quote from Cable Lock Foundation Repair for foundation repairs.
The sole issue in the appeal is whether the trial court abused its discretion in denying class certification and finding that the predominance requirement of La. C.C.P. art. 591 B(3) was not satisfied.
The crux of the underlying claim in the case sub judice is the Louisiana Valued Policy Law ("VPL"), La. R.S. 22:1318, formerly La. R.S. 22:695, which may apply to total losses sustained by the plaintiff class as a result of covered (wind) and uncovered (flood) damages caused by Hurricane Katrina. The plaintiffs contend that the VPL statute mandates payment of policy limits in the event of a total loss when a property is destroyed by either an insured peril or by a combination of insured and non-insured peril.
Prior to the trial court's decision on the class certification issue, ANPAC filed a motion for summary judgment challenging the plaintiffs interpretation of the statute. The motion was denied by the trial court on 1 December 2009, and writs were denied by this court (Wallace v. Louisiana Citizens Property Ins. Co., 09-1650, unpub. (La.App. 4 Cir. 1/28/10)), and by the Louisiana Supreme Court (Wallace v. Louisiana Citizens Property Ins. Co., 10-0450 (La.5/21/10), 36 So.3d 231).
In making its decision, the trial court cited Terrebonne v. Allstate Ins. Co., 251 F.R.D. 208 (E.D. La. Jul 31.2007). The trial court noted the similarity between the case at bar and Terrebonne, where the court dismissed a VPL class action, holding that:
... plaintiffs' claims still require highly individualized inquiries into the cause of each plaintiffs loss and the amount of damages sustained at each of the plaintiffs properties.... [A] VPL case still required proof by someone of the proximate cause of each plaintiffs total loss.... Other district courts have likewise rejected Katrina-related class certifications under Rule 23(b)(3) because of the highly individualized and varied nature of the respective plaintiffs' claims. See Aguilar [v. Allstate Fire & Cas. Inc. Co.], 2007 WL 734809 [E.D. La. Mar. 6, *518 2007]; Spiers v. Liberty Mut. Fire Ins. Co., No. 06-4493, 2006 WL 4764430 (E.D.La. Nov.21, 2006); Guice v. State Farm Fire & Cas. Co., 2006 WL 2359474 (S.D.Miss. Aug.14, 2006). The Court therefore concludes that certification of plaintiffs' proposed class is inappropriate under Rule 23(b)(3), as the different factual circumstances pertaining to each claim outweigh the common legal issues. [Footnote omitted.]
In the case at bar, the proposed class was to be:
All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place on August 29, 2005 a fire (homeowner's) insurance policy with one of the named Louisiana defendants, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss as a result of Hurricane Katrina.
The trial court based its judgment primarily on the predominance requirement of La. C.C.P. art. 591 B(3), an essential component of class certification. Because it is not relevant to our decision in this case, we pretermit any discussion of the VPL issue as the resolution the class certification issue is dispositive of the whole.
The standard of review for class certification is bifurcated: factual findings are reviewed under the manifest error/clearly wrong standard, but the trial court's judgment on whether to certify the class is reviewed under the abuse of discretion standard. Dupree v. Lafayette Ins. Co., 09-2602, p. 7 (La.11/30/10), 51 So.3d 673, 676; Brooks v. Union Pacific R. Co., 08-2035, p. 10 (La.5/22/09), 13 So.3d 546, 554; Chalona v. Louisiana Citizens Property Ins. Corp., 08-0257, pp. 4-5 (La. App. 4 Cir. 6/11/08), 3 So.3d 494, 500.
These two standards of review correspond with the two-step process for determining whether to certify a class action. First, a trial court must find a factual basis exists to certify an action as a class action. Second, the court must exercise its discretion in deciding if certification is appropriate. Galjour v. Bank One Equity Investors-Bidco, Inc., 05-1360, p. 7 (La.App. 4 Cir. 6/21/06), 935 So.2d 716, 722, citing Singleton v. Northfield Ins. Co., 01-0447, p. 7 (La.App. 1 Cir. 5/15/02), 826 So.2d 55, 61.
The Louisiana Supreme Court has mandated that errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification may be modification or the class decertified if subsequent developments during the course of the litigation so warrant. Dupree, supra, p. 7, 51 So.3d at 676. Further, La. C.C.P. art. 592 A(3)(c) states that a trial court "may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action."
A class action is a procedural tool wherein substantive facts are not considered when deciding the issue of certification. Pollard v. Alpha Technical, 08-1486, p. 15 (La.App. 4 Cir. 1/28/ 10), 31 So.3d 576, 582; Andry v. Murphy Oil, U.S.A., Inc., 97-0793 to 97-0800, pp. 2-3 (La.App. 4 Cir.4/1/98), 710 So.2d 1126, 1129. See also Thomas v. Mobil Oil Corp., 08-0541, p. 18 (La.App. 4 Cir. 3/31/09), 14 So.3d 7, 18-19. When reviewing the trial court's ruling regarding class certification, we do not consider whether a plaintiffs claims state a cause of action or have substantive merit, or whether a plaintiff will ultimately prevail on the merits. Munsey v. Cox Communication of New Orleans, Inc., 01-0548, p. 5 (La.App. 4 Cir. 3/20/02), 814 *519 So.2d 633, 636. Rather, our task is to examine the plaintiffs legal claims and to determine only whether a class action is the appropriate procedural device in light of established Louisiana criteria. Id.
The purpose of the class action is to "adjudicate and obtain res judicata effect on all common issues applicable not only to the class representatives who bring the action, but to all others who are similarly situated." Chiarella v. Sprint Spectrum LP, 04-1433, p. 16 (La.App. 4 Cir. 11/17/05), 921 So.2d 106, 118, citing Ford v. Murphy Oil U.S.A., Inc., 96-2913, 96-2917, 96-2929, p. 4 (La.9/9/97), 703 So.2d 542, 544.
In Louisiana, the class certification is governed by La. C.C.P. art. 591, et seq. Section A of article 591 provides that a civil action must first meet five prerequisites to qualify for class certification. Those prerequisites are as follows:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
These five prerequisites are commonly referred to as numerosity, commonality, typicality, adequacy, and identifiability.
In addition to these five prerequisites, section B of article 591 lists three additional criteria, only one of which need be satisfied to certify a class. Under article 591 B, a trial court must find that:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;

*520 (d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation....
The party seeking class certification has the burden of proving that all statutory requisite elements for certification exist. Dupree, p. 10, 51 So.3d at 679; Oubre v. Louisiana Citizens Fair Plan, 07-66, p. 6 (La.App. 5 Cir. 5/29/07), 961 So.2d 504, 508, citing, Daniels v. Witco Corp., 03-1478 (La.App. 5 Cir. 6/1/04), 877 So.2d 1011, 1014. Thus, a plaintiff must show that the class is definable and that it satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Watters v. Louisiana Dept. of Social Services, 05-0324 to 05-0326, p. 10 (La.App. 4 Cir. 4/19/06), 929 So.2d 267, 275; Davis v. Jazz Casino Co., 03-0005, p. 4 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 886.
In the case at bar, the trial court's reasons for judgment are silent as to any specific analysis of La. C.C.P. art. 591 A. Although the trial court references the applicable portion of article 591, its analysis stops there. While it appears to be implicit in the trial court's reasons, we must acknowledge that we cannot determine to an absolute certainty from the record if in fact the plaintiff satisfied the requirements of article 591 A. Rather, the trial court concluded that "predominance" under article 591 B(3) was lacking, thus pretermitting the need to address article 591 A. That is to say, the trial court concluded that since the plaintiff did not satisfy any one of the three subparts of article 591 B, the court did not have to address any of the five tests of article 591 A. Although article 591 contemplates that a trial court will establish whether a plaintiff satisfies all parts of article 591 A first and then determine whether a plaintiff satisfies one of the subparts of article 591 B (and such is the preferred approach), we find that a determination under article 591 B first is sufficient to establish whether a plaintiff will ever be able to establish his right to class certification. If a plaintiff cannot satisfy one of the three requirement of articles 591 B, it becomes irrelevant whether he satisfies the five requirements of article 591 A.
An inquiry into predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Brooks, 08-2035, p. 19, 13 So.3d at 560; Amchem Products, Inc., v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). The predominance requirement is more demanding than the commonality requirement and, as such, mandates caution, especially where "individual stakes are high and disparities among class members great." The predominance requirement "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class," a process that ultimately "prevents the class from degenerating into a series of individual trials." Brooks, p. 19, 13 So.3d 560; O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 738 (5th Cir.2003);[1]see also Daniels, 03-1478, p. 7, 877 So.2d at 1016.

*521 The determination of whether a class action meets the requirements imposed by law involves a rigorous analysis in which the trial court must evaluate, quantify and weigh the relevant factors to determine the extent to which the class action would promote or detract from the goals of effectuating substantive law, judicial efficiency and individual fairness. As we previously held in Ford, [supra,] only mass torts arising from a common cause or disaster may be appropriate for class certification. In this mass tort case, this means that the cause of flooding must be the same for each class member, and if there is more than one cause of flooding, each of the causes must be the same for each class member. If each class member has to prove causation separately, this would defeat the purpose of a class action. This is difficult when multiple defendants and causes are involved. In addition, in order to determine whether common issues predominate over individual issues, the trial court must identify the substantive issues that will control the outcome of the case, assess which issues will predominate, and then determine whether the issues are common to the class. This process ultimately prevents the class from degenerating into a series of mini-trials.
Brooks, p. 21, 13 So.3d at 560.
In the case at bar, the trial court heard testimony that the potential class members that resided in over seven parishes were severely impacted by Hurricane Katrina. The evidence also explained how environmental factors had a profound impact on the determination of causation and the damages to each individual potential class member as a result of the common event. The environmental factors that caused variable effects on buildings, properties, and infrastructure were site conditions, wind intensity, flood waters, precipitation damage, flood protection, lack of flood protection, geographic distance from the center of the hurricane, and wind speed. These factors, although illustrative, are by no means exclusive, but are demonstrative of how variable conditions are site specific and different for each property owner/ policyholder. The trial court heard testimony from engineers such as Donald Barnes, a civil and structural engineer, who specifically opined as to as to the cause and effect of Hurricane Katrina on the Orgerons' property and the property of others. He opined that the structural damages sustained due to the wind effects of Hurricane Katrina were not uniform in nature. Barry Klim, a climatologist, gave a more generalized climatic evaluation that supported the premise that a wide variation of climatic condition across the affected area occurred. The obvious conclusion from the evidence is that so many different causes of damage and theories of liability exist that the present litigation, if maintained as a class action, begins to resemble a spider web, with each miniscule area of the seven parish area experiencing differing weather and flood conditions. That is, absent a common cause, it will be necessary for each class member to provide individualized proof of causation as well as proof of damages.
While there may have been one event cause, to-wit, Hurricane Katrina, innumerable sources of causation for "Katrina" storm related damages exist. Class certification would result in a deluge of mini *522 trials and a morass of litigation, defeating the purpose of a class action.
It is apparent from the record that the trial court dovetailed elements of the commonality prerequisite and predominance requirement to make its final determination not to certify the class on the legal issue of predominance, as outlined in La. C.C.P. art. 591 B(3). The trial court specifically held that questions of law or fact common to members of the class did not predominate over any questions affecting only individual members, and that the class action was not superior to other available methods of adjudicating the controversy pursuant to La. C.C.P. art. 591 B(3). Dupree, pp. 10-11, 51 So.3d at 679. Here, the plaintiffs claims do not predominate sufficiently to satisfy the legal threshold of La. C.C.P. art. 591 B(3). Accordingly, we find no error in the trial court's ruling.
As supported by the record before us, law, and jurisprudence, we find no abuse of discretion or manifest error in the trial court's denial of class certification. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
McKAY, J., Dissents.
McKAY, J., Dissents.
I respectfully dissent. As noted in the majority opinion, the record before us does not reflect whether the trial court made an analysis of La. C.C.P. art. 591 A. As such, it is impossible to determine if in fact the plaintiff satisfied the requirements of La. C.C.P. art. 591 A. Accordingly, I would reverse and remand.
NOTES
[1] We note that it is appropriate to consider federal jurisprudence in making determinations respecting Louisiana class certification because of the similarity between the federal statute and the Louisiana Code of Civil Procedure respecting class actions. See Dupree, p. 5 n.5, pp. 8-9 n. 6, 51 So.3d at 678 and 679.