BELSOME, J.,
dissents with reasons.
Ill respectfully dissent.
The sole issue in this appeal is whether the trial court correctly denied the plaintiffs’ motion to certify a class action involving all claims filed by patients of Tulane University Medical Center and Clinic. Here, the defendant, Tulane, admits that between October 7, 2010, and December 1, 2010, it used improperly sterilized endoscopes on 366 patients during the course of their medical procedures. After being notified of the issue, seventy-one patients have pursued claims for negligent infliction of emotional distress. Twenty of these patients filed lawsuits and sought class certification.
In order to qualify for class certification, there are seven general requirements that need to be met. See La. C.C.P. art. 591. In the instant case, the trial court denied class certification based on the plaintiffs failure to meet numerosity, predominance and/or superiority.

Numerosity

Numerosity requires that the members of the class be so numerous that joinder is impracticable. No definitive number has been established that automatically makes joinder impractical, rather, the determination is based on the facts and circumstances of each case. Chiarella v. Sprint Spectrum LP, 04-1433, p. 18 (La.App. 4 Cir. 11/17/05), 921 So.2d 106, 119. This Court has held, however, that a presumption arises that joinder is impractical, for purposes of class certification, if more than forty class members exist. Husband v. Tenet HealthSystems Mem’l Med. Ctr., Inc., 08-1527, p. 9 (La.App. 4 Cir. 8/12/09), 16 So.3d 1220, 1229, unit denied sub nom., 09-2163 (La.12/18/09), 23 So.3d 949 (citing Vela v. Plaquemines Parish Government, 658 So.2d 46, 48 (La.App. 4 Cir. 6/29/95)). Here, the class exceeded 366 plaintiffs giving rise to the presumption that joinder was impractical.
|2The determination of numerosity is based in part upon the number of putative class members, but is also based upon considerations of what is now commonly referred to as the Galjour factors. Those factors are: 1) the geographic dispersion of the class, 2) the ease in which the class members may be identified, 3) the size of the individual claims and financial resources of class members, 4) the nature of the action, and 5) judicial economy in avoiding a multiplicity of lawsuits. Galjour v. Bank One Equity Investors-Bidco, Inc., 05-1360, p. 10 (La.App. 4 Cir. 6/21/06), 935 So.2d 716, 724-25; and Chalona v. Louisiana Citizens Property Ins. Corp., 08-257, p. 6 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, 500-01. When the trial court analyzed the Galjour factors, it found that the factors weighed against numerosity.
*581 Although these factors are relevant considerations, there is no precedent mandating that all five factors have to be met in order to fulfill the numerosity requirement. Among the Galjour factors considered by the court was the dispersion of the class. “Wide geographic dispersion of class members supports a finding of impracticability of joinder and, therefore, a conclusion that the numerosity requirement is satisfied.” Galjour, 05-1360, p. 11, 935 So.2d at 725 (citing Moore’s Federal Practice, § 23.22(l)(d)). Here, the trial court assumed that the majority of the class would be domiciled near its forum without any support from the record.
The next Galjour factor which raised concern was ease of identification. “Knowledge of names and existence of members has been called the ‘most important’ factor, precisely because it renders joinder practicable.” Galjour, 05-1360, p. 11, 935 So.2d at 725. “When the group is small and the individual members are identifiable, joinder rarely will be impracticable.” Id. (citations omitted). The plaintiffs set forth two putative subclasses: A) those individuals who underwent endoscopy procedures during the relevant period, and B) those married |sto or in a sexual relationship with an individual defined in subclass A. The trial court only reached a determination with respect to subclass A, whose 366 members were readily ascertainable. In order to accurately assess the ease of identification, the entire group of plaintiffs, as a whole, needed to be considered. Thus, the trial court erred when it only evaluated subclass A when reviewing this factor.
Another relevant Galjour factor examined was the size of the claims of class members or their financial ability to bring individual suits. Galjour, 05-1360, p. 13, 935 So.2d at 726. While recognizing that there was no evidence regarding the size of the plaintiffs’ claims, or their ability to pay, the trial court nevertheless weighed these factors against numerosity. Clearly the court erred in making blanket presumptions regarding the size of the plaintiffs’ claims, as well as their ability to seek individual counsel.
The final Galjour factor discussed by the trial court was the judicial economy of avoiding multiplicity of lawsuits. Once again, the trial court weighed this factor against numerosity. In its reasons, the trial court misapplied the language in Galjour. The Galjour Court explained that resolution of this factor primarily hinges upon whether there is a sufficient number of people expressing a desire to assert a claim. Galjour, 05-1360, p. 13, 935 So.2d at 726. For this factor, the trial court focused on the fact that the plaintiffs had not expressed dissatisfaction with the procedural posture of the case, i.e., that it was not proceeding as a class action. Further, when making a determination as to whether the number of potential class members indicating a desire to assert a claim was sufficient, the trial court considered that of the twenty potential class members who had already filed suits, five planned on opting out. Opting out of a class that has not been certified is premature, and it should not be considered when making a determination on judicial economy. See Pollard v. Alpha Technical, 08-1486, p. 10 (La.App. 4 Cir. 1/28/10), 31 So.3d 576, 585.
[¿Moreover, Galjour is distinguishable from the instant case. Finding that there was an insufficient number of plaintiffs expressing a desire to assert a claim, the Galjour Court concluded that the numer-osity requirement was not satisfied. However, the maximum class size was approximately fifty; there was only one named plaintiff in the suit, Mr. Galjour; and he could only identify three other putative *582 class members interested in pursuing the suit. The number of potential class members in this case weigh more heavily in favor of class certification in order to avoid multiple individual lawsuits.
Accordingly, I find that the trial court erred in its analysis regarding numerosity. First, the trial court failed to give the plaintiffs the appropriate presumption that joinder was impractical based on the number of potential class members. Additionally, it erred in its consideration of the Galjour factors by focusing on facts that were irrelevant or not supported by the record.

Predominance and Superiority

To warrant certification, the plaintiffs also needed to establish that common issues predominated over any individual issues and that the class action procedure was superior to any other. The inquiry into predominance tests “whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.” Brooks v. Union Pacific R. Co., 08-2085, p. 19 (La.5/22/09), 13 So.3d 546, 560 (quoting Amchem Products, Inc.v. Windsor, 521 U.S. 591,117 S.Ct. 2231, 2249,138 L.Ed.2d 689 (1997)). The Louisiana Supreme Court has explained that the predominance requirement is more demanding than the commonality requirement, because it “entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class,” a process that ultimately “prevents the class from degenerating into a series of individual trials.” Id. (quoting O’Sullivan v, Countrywide Home Loans, Inc., 319 F.3d 732, 738 (5th Cir.2003)).6 Since the 1997 revision, La. C.C.P. art. 591(B)(3)(a) — (f) has set forth six items to evaluate in determining whether the common questions predominate over questions affecting only individual members, and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[1] With these considerations in mind, the plaintiffs’ claims should be rigorously evaluated to determine whether the common substantive issues, if any, predominate over individual questions, and whether the class action procedure is superior to any other under these facts.
Although the trial court identified a common set of issues that will control the outcome of the case, it concluded that the plaintiffs failed to prove that these common questions would predominate over questions affecting individual class members. In particular, it expressed concern regarding the possibility that individualized issues on causation would turn the class action into a series of mini-trials. However, this contention ignores the fact that once the common questions of causation and liability are answered, the remaining issue is one of damages. And, “[t]he mere fact that varying degrees of damages may result from the same factual transac *583 tion and same legal relationship, or that class members must individually prove their right to recover, does not preclude class certification.” | Dupree v. Lafayette Ins. Co., 09-2602, p. 10 (La.11/30/10); 51 So.3d 673 (citation omitted). See also La. C.C.P. art. 591(C). If these factors were permitted to disqualify class actions, potential class members would never meet the criteria for certification, as the degree of individual damages if often an issue within any class action suit. The trial court was clearly wrong in finding that the individual issues predominate over the common ones; likewise, its determination that class certification was not superior to joinder is equally flawed.
Generally, the trial judge is given great discretion in determining whether a class action is appropriate; however, jurisprudence has required the trial court to grant certification when the elements have been met. Davis v. Jazz Casino Co., L.L.C., 03-05, pp. 3-4 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 886, writ denied, 04-572 (La.4/23/04), 870 So.2d 304 (citing Billieson v. City of New Orleans, 98-1232, p. 8 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 152-53. Given that the facts of this case fit within each of the components necessary to certify a class action suit under La. C.C.P. art. 591, I find that the trial court abused its discretion in denying the plaintiffs’ motion. Thus, for the reasons discussed, I would reverse and remand for further proceedings.

. La. C.C.P. art. 591(B)(3)(a)-(f) provides for the following considerations:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
id) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class liti-gationf.]